Com. *v.* Forgione et al., Appellants.

Argued April 12, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Alexander H. Schullman,* for appellants.

*Chauncey E. Pruger,* Assistant District Attorney, and with him *Andrew T. Park,* District Attorney, for appellee.

OPINION BY PARKER, J., July 13, 1934:

Carmine Forgione, Martin Ridge, Valentine Delledone, and Dan Garrett, with twenty-one others, were indicted for riot, inciting to riot, and conspiracy to riot, and Carmine Forgione was also indicted for felonious assault and battery. The cases were heard by one jury and Valentine Delledone and Martin Ridge were found guilty of riot and conspiracy to riot, Dan Garrett of riot, and Carmine Forgione of riot and felonious assault and battery. The four defendants were sentenced and have taken separate appeals which were argued together in this court and will be disposed of in one opinion.

The defendants were all members of an organization in the borough of Rankin, Allegheny County, known as Unemployed Council of Rankin. The professed purposes of this organization were the securing of relief for those suffering from unemployment by reason of a crisis in industry and commerce, making contact between the dispensers of relief and those in need and securing adequate allowances for such purposes. Headquarters were maintained in the borough

where the members gathered and listened to speeches. A delegation from this council made an informal, and finally a formal, request to the school board for the use of a high school auditorium for the purpose of holding a public meeting. This request was refused by a vote of the school directors of the borough. The Commonwealth offered evidence tending to show that after threats by some of the defendants and members of the Unemployed Council to take forcible possession of the school building for the purpose of a meeting, the defendants and others organized a parade, repaired to the schoolhouse, and made a "demonstration" on the school grounds, accompanied by much noise and the throwing of bricks and other missiles through the windows and the breaking of glass in a door of the school building. Police and deputy sheriffs, who had been forewarned, intervened and one of the officers was attacked with a knife by Carmine Forgione and wounded in the abdomen. Under the evidence of the Commonwealth there was a riot. Although much of the Commonwealth's evidence was denied and the defendants claimed that such disturbance as occurred was due to an unprovoked and unlawful attack by policemen and sheriffs on unoffending citizens, the jury found all four guilty.

We need to consider but one question and that is controlling. Did the defendants have a fair trial? They insist that they did not and in support of their contention complain of certain inflammatory remarks by the assistant district attorney in his address to the jury, of remarks of the court in answer to defendants' objections, and of the cross-examination by the district attorney of the defendants and their witnesses over their objections as to certain alleged irrelevant matters.

During the concluding address of the district attorney, counsel for the defendants interposed an ob-

jection and was then ordered by the court not to interfere with the district attorney but to take down the remarks and dictate them when he had finished. At the conclusion of the address, counsel for the defendants again objected and moved for the withdrawal of a juror, basing the request on alleged statements of the district attorney, some of which were as follows: "The council of the unemployed is nothing more or less than a cloak for the dissemination of Communistic literature." "Communism must be nipped in the bud, it's dangerous." "The school board refused to give them the school for Communistic meetings." "The Communistic political tenets are against authority, law and order." "That's the kind of political theories that are taught by the unemployed council, radical theories." "This is political claptrap and political heresy." "Do you know what Communism is? It is a theory of revolution." He concluded his address with the remark: "Don't let these Reds get away."

When these statements were placed on the record, neither the district attorney nor the trial court challenged their accuracy. The trial judge refused a motion to withdraw a juror and not only failed to advise the jury to disregard any such appeal to prejudice, but placed his seal of approval upon the statements of the district attorney, saying: "We followed the addresses of both counsel for defendants. We also followed the remarks of the district attorney. We believe the district attorney was perfectly justified in his remarks in his response to what counsel for defendants said. The remarks of counsel for defendants largely was abuse of the constituted authorities, especially of the policemen, and, therefore, the district attorney was entirely within his rights in making this answer."

On cross-examination of defendants and their witnesses, the district attorney endeavored to elicit in-

formation which would show that the defendants were communists. He was not successful in this effort, much less in showing that any of the appellants were members of a party which advocated the resort to force to overthrow the government. In rebuttal, the Commonwealth called the superintendent and one of the teachers in the high school of Rankin who testified to conversations with Sam Roy, a student seventeen years of age, one of the defendants. The teacher gave some testimony from which it could be inferred that this boy had communistic sympathies, and the superintendent stated that Roy expressed himself as not "being in sympathy with our government." There was not any direct evidence from which it could be even inferred that any of the other defendants advocated the resort to force to overthrow the government or that they were members of any communistic or radical political parties. Consequently, the statement of the district attorney that charged the defendants with being communists, Reds, and, in fact, revolutionists was without support in the evidence except insofar as it concerned the seventeen year old boy, Sam Roy. We cannot regard the remarks of the district attorney as other than inflammatory and an appeal to prejudices such as cannot be permitted in jury trials. "The effect of such remarks depends largely upon the atmosphere of the trial and the proper action to take in such case is largely a matter for the discretion of the presiding judge": Com. v. Del Giorno, 303 Pa. 509, 519, 154 A. 786. But when counsel, prompted by unwarranted zeal, indulge in intemperate remarks, it is an abuse of discretion to fail to caution the jury against being influenced by such appeals; and in some cases it is the absolute duty of the trial judge to withdraw a juror and continue the case: Com. v. Cicere, 282 Pa. 492, 128 A. 446.

While the Commonwealth's evidence was sufficient

to support a conclusion by the jury that the appellants were guilty and resorted to violence in showing their displeasure at the refusal of the school directors to permit the use of a school building for a public meeting and that the school directors were justified in such refusal, it did not warrant the district attorney in asserting that they were "Reds," communists, or revolutionists, or in saying, "Don't let these Reds get away." It was also error for the trial court to approve the remarks and to fail at least to caution the jury against heeding the appeal to prejudice and passion. Disregard and defiance of the law receive the just condemnation of good citizens, but all persons who have disobeyed the statutes are not to be placed in the category of "Reds" and revolutionary communists.

"The district attorney is a quasi-judicial officer, representing the Commonwealth, which seeks no victims, but only justice; ...... since he is invested with these grave responsibilities, he should, at all times, conduct the Commonwealth's case fairly, present it in an impartial manner and avoid seeking to influence the jury by arousing their prejudices": Com. v. Cicere, supra (p. 495). "A cause is not well tried unless fairly tried and a verdict obtained by incorrect statements or unfair argument or by an appeal to passion or prejudice stands on but little higher ground than one obtained by false testimony": Saxton v. Pittsburgh Rys. Co., 219 Pa. 492, 495, 68 A. 1022.

There is not any merit in the position of the trial court that intemperate remarks upon the part of counsel for the defendants justified a reply in kind by the district attorney. In Com. v. Cicere, supra, the Commonwealth and trial court attempted to justify the address of the district attorney "by similar intemperate language of defense," but the Supreme Court rejected such argument, refusing to reverse, however, because

the trial court cautioned the jury not to be swayed by such appeals. Assuming that intemperate language was used by the counsel for the defendants, as is alleged in the Commonwealth's brief, and we have no reason to question such statement, the district attorney should have objected and as he did not do so the trial judge should, on his own motion, have stopped counsel for the defendants and required him to confine his remarks to the evidence, to refrain from the use of intemperate language and conduct the defense according to the rules of conduct governing attorneys and jury trials.

The fifteenth and sixteenth assignments of error are not sustained. The jury might have found from the defendants' own testimony that there was, in 'fact, a riot. The court carefully instructed the jury that they were the judges of the facts and were to determine the guilt or innocence of the defendants, and it was not improper for the court to describe such a demonstration as a riot.

The judgments at Nos. 250, 264, 265, 278, and 295, April Term, 1934, are reversed and new trials ordered.